**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| MILITARY ORDER OF THE PURPLE HEART SERVICE FOUNDATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WAKE FOREST PURPLE HEART FOUNDATION, INC.,<br><br>Defendant. | Civil Action No. 5:26-cv-00931<br><br>**COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF** |

Plaintiff Military Order of the Purple Heart Service Foundation, Inc. ("Plaintiff" or "Purple Heart Foundation") brings the following complaint against Defendant Wake Forest Purple Heart Foundation, Inc. ("Defendant" or "Wake Forest Purple Heart Foundation"):

## I. INTRODUCTORY STATEMENT

1. This is an action for service mark infringement. Plaintiff is a national non-profit organization that has raised funds to support wounded veterans and their families since its founding in 1957. The Purple Heart Foundation owns multiple federally registered service marks that it uses in these fundraising efforts. Defendant is an unaffiliated charitable organization based in North Carolina. Without a license from Plaintiff or any right to do so, Defendant has been using Plaintiff's service marks in its fundraising activities and has refused to cease such infringement after repeated requests. Accordingly, Plaintiff now brings this action to enforce its rights.

## II. NATURE OF THE CASE

2. This is an action for service mark infringement, unfair competition, and cybersquatting under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the common law of the state of North Carolina, and N.C. Gen. Stat. § 75-1.1 *et seq.*, seeking preliminary and permanent injunctive relief in addition to monetary relief.

## III. PARTIES

3. Plaintiff Military Order of the Purple Heart Service Foundation, Inc. is a Florida non-profit corporation with a principal place of business at 7008 Little River Turnpike, Suite D, Annandale, Virginia 22003.

4. Defendant Wake Forest Purple Heart Foundation is a North Carolina non-profit corporation with a principal place of business at 1008 Corbeling Point, Wake Forest, North Carolina 27587.

## IV. JURISDICTION AND VENUE

5. Plaintiff Purple Heart Foundation's claims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq*. This Court has federal question jurisdiction over these claims under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks and service marks); and 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark and service mark laws).

6. This Court has jurisdiction over the state law claims in this action under 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7. This Court has personal jurisdiction over Wake Forest Purple Heart Foundation because it is a North Carolina non-profit corporation; has a principal place of business in Wake Forest, North Carolina; transacts business in this judicial district using the infringing names and service marks that are at issue in this case; and commits the wrongful actions alleged herein within this judicial district.

8. Venue is proper under 28 U.S.C. § 1391 because Wake Forest Purple Heart Foundation's principal place of business is in this judicial district and division, a substantial part

of the events giving rise to the claims occurred within this judicial district and division, and Wake Forest Purple Heart Foundation is subject to the Court's personal jurisdiction.

## V. FACTUAL BACKGROUND

### A. Plaintiff Purple Heart Foundation's Origins

9. The Purple Heart Foundation's roots are intertwined with the history and legacy of the Purple Heart Medal, one of the most revered military decorations in the United States. The Purple Heart Medal traces its origins to General George Washington's creation of the Badge of Military Merit in 1782, a military distinction intended to recognize extraordinary service and sacrifice. The modern Purple Heart Medal was revived in 1932, the bicentennial of General Washington's birth. It remains a symbol of wounds suffered and lives sacrificed in the defense of the Nation.

10. In 1932, recipients of the Purple Heart Medal formed what is now known as the Military Order of the Purple Heart ("Order"). The Order is an organization dedicated to protection, mutual interests, and fellowship of Purple Heart Medal recipients. At its 1951 national convention, the Order resolved to establish an independent, dedicated charitable organization to perform fundraising activities. The Military Order of the Purple Heart Service Foundation, Inc. was subsequently established in 1957. It is commonly known as the "Purple Heart Foundation."

11. The Purple Heart Foundation has continuously operated for nearly 70 years as a nationally recognized charitable organization devoted to honoring the sacrifices of Purple Heart Medal recipients and providing meaningful financial and other assistance to wounded veterans and their families.

12. Because the Purple Heart Foundation is not a membership organization, it does not obtain funding from membership fees. It raises funds through a variety of charitable fundraising activities conducted in support of its mission to assist Purple Heart Medal recipients, wounded

veterans, and their families. Among other things, the Purple Heart Foundation solicits and receives monetary contributions from individual donors, corporate sponsors, and philanthropic organizations; conducts direct-mail and online fundraising campaigns; receives donations of vehicles and other personal property for resale; and partners with businesses and community organizations to support its charitable programs. Plaintiff solicits donations directly from the public.

13. The Purple Heart Foundation is a national organization that receives donations from supporters in all fifty states, totaling approximately $200 million since 2014. It has long received donations from persons in North Carolina as well, raising more than $635,000 since 2017 alone.

14. Funds raised by the Purple Heart Foundation are used to provide academic scholarships, emergency financial assistance, service dog programs, mental health and wellness resources, veterans' advocacy initiatives, and other services benefiting Purple Heart Medal recipients and the broader veteran community. Through these fundraising efforts over nearly seven decades, the Purple Heart Foundation has generated hundreds of millions of dollars in financial support that have been used to better the lives of Purple Heart Medal recipients.

15. On or about September 16, 1999, the Purple Heart Foundation acquired the domain name <purpleheartfoundation.org>, which is the core part of its website URL https://purpleheartfoundation.org. The Purple Heart Foundation advertises and promotes its fundraising services on this website, which allows members of the public to learn about the Purple Heart Foundation, the history of the Purple Heart Medal, and donation opportunities. People accessing the website can donate to the Purple Heart Foundation directly from the website. The Purple Heart Foundation's domain name and website are vitally important to its mission and fundraising activities.

16. The Purple Heart Foundation extensively promotes and advertises its services. Since 2015, it has spent more than $39 million on advertising and promotion.

17. The Plaintiff Purple Heart Foundation also maintains an active presence on social media platforms such as Facebook, Instagram, and LinkedIn. Plaintiff uses its social media accounts to promote its charitable services and fundraising activities.

18. To this day, the Plaintiff Purple Heart Foundation continues to carry forward its historic mission of assisting Purple Heart Medal recipients, veterans, and their families while preserving and promoting the legacy of military service, sacrifice, and patriotism represented by the Purple Heart Medal. It has reached countless veterans and their families throughout the United States and has developed strong relationships with donors, non-profit organizations, businesses, governmental entities, and members of the public.

**B. Plaintiff Purple Heart Foundation's Service Mark Rights**

19. Over many years of continuous operation, Plaintiff has invested substantial time, effort, and financial resources in cultivating public recognition of the PURPLE HEART® name and mark as identifying a trusted source of charitable fundraising services benefiting wounded veterans and their families. As a result, consumers, donors, volunteers, beneficiaries, and other members of the public have come to associate the PURPLE HEART® name and related marks with Plaintiff and its mission. Plaintiff has developed substantial goodwill under the PURPLE HEART® name and associated marks.

20. Plaintiff is the owner of all right, title, and interest in and to a family of PURPLE HEART-formative service marks (collectively, the "PURPLE HEART® Marks"), including but not limited to the following marks and registrations therefor on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark and Reg. No. | Dates | Goods/Services |
|---|---|---|
| PURPLE HEART<br><br>Reg. No. 4015788 | App. Date:<br>Jan. 28, 2011<br><br>Reg. Date:<br>Aug. 23, 2011 | IC 36: Charitable fundraising |
| PURPLE HEART FOUNDATION<br><br>Reg. No. 5621171 | App. Date:<br>Apr. 3, 2018<br><br>Reg. Date:<br>Dec. 4, 2018 | IC 36: Charitable fundraising services |
| Reg. No. 6330248 | App. Date:<br>Apr. 3, 2020<br><br>Reg. Date:<br>Apr. 20, 2021 | IC 36: Charitable fundraising services |
| Reg. No. 2208425 | App. Date:<br>July 7, 1997<br><br>Reg. Date:<br>Dec. 8, 1998 | IC 36: providing scholarships, tuition assistance and financial aid to combat-wounded veterans, their dependents and survivors<br><br>IC 42: association services, namely, promoting the interests of combat-wounded veterans, their dependents and survivors |

21. The registrations having Registration Nos. 4015788; 5621171; and 2208425 are incontestable pursuant to 15 U.S.C. §§ 1065 and 1115(b) and are thus conclusive evidence of the validity of the marks covered by the registrations and Plaintiff's ownership of and exclusive right to use the marks covered by those registrations. The registration having Registration No. 6330248 is *prima facie* evidence of the validity of the mark covered by the registration and Plaintiff's ownership of, and exclusive right to use, the mark covered by the registration. Copies of the USPTO service mark registration certificates and printouts of USPTO records showing the current

status and title for each of the registrations listed in the preceding paragraph are attached as ***Exhibit A***.

22. In addition to the priority rights enjoyed by Plaintiff based on the filing dates of its federal registrations, Plaintiff enjoys use-based priority rights. Plaintiff has for many decades used the marks PURPLE HEART and PURPLE HEART SERVICE FOUNDATION in connection with charitable fundraising services and veteran charity services. Additionally, Plaintiff has used the logo depicted below since at least 1958.

23. The PURPLE HEART® Marks are inherently distinctive. They have been extensively used and promoted in advertisements for Plaintiff Purple Heart Foundation in connection with its services for many years, at significant expense to Plaintiff. The PURPLE HEART® Marks are thus distinctive indicators of Plaintiff as a trusted source of charitable fundraising services benefiting wounded veterans and their families. This use of the PURPLE HEART® Marks has generated valuable goodwill for the marks and for Plaintiff.

24. As a result of the longstanding and extensive use and promotion of the PURPLE HEART® Marks in connection with Plaintiff's services, the marks are distinctive and well-known to consumers, and are strong indicators of the Purple Heart Foundation as a trusted source of charitable fundraising services benefiting wounded veterans and their families.

**C. Defendant Wake Forest Purple Heart Foundation's Activities**

25. Defendant Wake Forest Purple Heart Foundation is a non-profit entity that is supported by donations and supports veterans and their families.

26. On information and belief, on or about May 13, 2011, Wake Forest Purple Heart Foundation acquired, through its authorized agent and proxy registrant organization Domains By Proxy, LLC, the internet domain name <wakeforestpurpleheartfoundation.org>, which is the core part of its website URL www.wakeforestpurpleheartfoundation.org.

27. Wake Forest Purple Heart Foundation hosts an annual "PURPLE HEART" Banquet every August on or around National Purple Heart Day (August 7), during which it honors Purple Heart Medal recipients. In connection with, and during, this banquet, Defendant prominently uses and infringes a number of Plaintiff's PURPLE HEART® Marks and engages in fundraising activities. According to a brochure available on Defendant's website, its annual PURPLE HEART Banquet has five sponsorship tiers structured by donation amount: Red ($100), White ($250), Blue ($500), Purple ($1,000), and Gold Star ($2,000+). A true and correct copy of the annual PURPLE HEART Banquet brochure is attached as ***Exhibit B***. The annual PURPLE HEART Banquet is a significant and lucrative fundraising event for Defendant. Although the dinner appears to be Wake Forest Purple Heart Foundation's primary fundraising activity, it solicits donations on its website throughout the year. *See* https://www.wakeforestpurpleheartfoundation.org/contact-us.html (PayPal donation link) (last visited Oct. 29, 2026).

28. In connection with its advertising and promotions for its fundraising and other activities, Defendant prominently uses the names, marks, and designations PURPLE HEART, PURPLE HEART FOUNDATION, and a logo depicting the Purple Heart Medal which is similar

in appearance and commercial impression to the marks covered by U.S. Registration Nos. 2208425 and 6330248 owned by Plaintiff.

29. By way of example, Wake Forest Purple Heart Foundation uses the logo depicted below throughout its advertising ("Defendant's Logo"). The logo features the text elements "Wake Forest Purple Heart Foundation," which contains verbatim the registered marks PURPLE HEART® and PURPLE HEART FOUNDATION® owned by Purple Heart Foundation. The logo additionally displays a depiction of the Purple Heart Medal, which is materially the same as the mark covered by Registration No. 6330248 owned by Plaintiff. The only difference between Defendant's Logo and Plaintiff's PURPLE HEART® Marks is the presence of the geographically descriptive term "Wake Forest." This geographically descriptive term does not distinguish Defendant's Logo or create a different commercial impression from the PURPLE HEART® Marks.

30. Wake Forest Purple Heart Foundation uses the PURPLE HEART® Marks and Defendant's Logo in many forms of print advertising and merchandise, including signage, mugs, clothing, keychains, and more.

31. Wake Forest Purple Heart Foundation maintains a Facebook page titled "Wake Forest Purple Heart Foundation," available at the URL https://www.facebook.com/wfpurpleheart. Defendant uses this Facebook page to promote awareness of its organization, services, and annual banquet. Defendant regularly posts updates about its activities to this Facebook page.

**D. Plaintiff Purple Heart Foundation's Attempts at Informal Resolution**

32. On August 5, 2026, having discovered Defendant's infringing uses of the PURPLE HEART® Marks, Plaintiff through counsel sent a letter to Defendant Wake Forest Purple Heart Foundation, putting it on notice of the Plaintiff's ownership of and rights to the PURPLE HEART® Marks. Plaintiff advised Defendant that its use of the PURPLE HEART name and related marks is likely to cause confusion in the marketplace and therefore conflicts with Plaintiff's rights in the PURPLE HEART® Marks. The letter requested that Defendant cease all use of the PURPLE HEART® Marks in connection with the organization's name, internet domain name/website URL, and depictions of the Purple Heart Medal as a source identifier, and that Defendant transfer all domain names containing the term "purpleheart" to Plaintiff. The letter also advised Defendant that Plaintiff might be willing to explore a limited service mark licensing arrangement if that was of interest to Defendant. A true and correct copy of the August 5, 2026 letter is attached as ***Exhibit C***.

33. Wake Forest Purple Heart Foundation responded to Purple Heart Foundation through counsel by letter dated August 11, 2026. The letter stated that Defendant disagreed that its activities conflicted with Plaintiff's service mark rights and declined Plaintiff's requests but welcomed a "constructive dialogue concerning reasonable measures that may further minimize any perceived confusion while allowing [Defendant] to continue its longstanding charitable mission." A true and correct copy of the August 11, 2026 letter is attached as ***Exhibit D***.

34. After further discussions, Plaintiff asked Defendant to submit a "short-form application providing basic information about the prospective licensee, its legal status, and its financial integrity and controls." Plaintiff also reiterated its demand that, in the interim, in the

absence of a licensing arrangement, Defendant needed to cease all use of the PURPLE HEART® Marks, as it had previously requested.

35. Counsel for the parties continued to discuss the particulars of a licensing arrangement in the weeks that followed via email. On September 14, 2026, Defendant declined to provide the information Plaintiff had requested, demanding that Plaintiff provide "licensing information first…so that [Defendant] can make an informed decision as to the most appropriate path forward." Plaintiff provided the requested licensing information on September 18, 2026, complete with a detailed explanation of the scope of the license and the monetary terms for such a license.

36. On October 6, 2026, having received no response to its prior email, Plaintiff requested a decision from Defendant about whether it was still interested in pursuing a license.

37. On October 7, 2026, Defendant's counsel responded that it "has carefully considered [Plaintiff's] position and remains firmly opposed to the demands set forth in its correspondence." Defendant further advised that this would be its last communication on the subject.

38. Defendant continues to use the PURPLE HEART® Marks in its advertising and marketing for the purposes of charitable fundraising. Exemplary uses of the marks, obtained from the website [www.wakeforestpurpleheartfoundation.org](http://www.wakeforestpurpleheartfoundation.org) and Defendant's Facebook page, available at https://www.facebook.com/wfpurpleheart, are provided below.

Founded in 2009, the WF Purple Heart Foundation honors men and women who fought in all U.S. military conflicts and were bestowed with the Purple Heart medal.




39. Wake Forest Purple Heart Foundation's continued use of the PURPLE HEART® Marks in advertising and marketing is likely to cause confusion amongst members of the public who wish to donate to the Purple Heart Foundation, the lawful owner of the PURPLE HEART® Marks. Further, Wake Forest Purple Heart Foundation's actions deprive the Purple Heart Foundation of its right to control the nature, quality, and reputation of the services offered under the PURPLE HEART® Marks and have interfered with the Purple Heart Foundation's ability to maintain consistent standards associated with its brand. Unless enjoined by this Court, Wake

Forest Purple Heart Foundation's unlawful conduct will continue to cause the Purple Heart Foundation immediate and irreparable harm for which there is no adequate remedy at law.

**COUNT I**
**Service Mark Infringement in Violation of 15 U.S.C. § 1114(1)**

40. The Purple Heart Foundation incorporates the allegations of all preceding paragraphs by reference as if fully set forth herein.

41. As a separate cause of action and ground for relief, the Purple Heart Foundation alleges that Wake Forest Purple Heart Foundation has been and is currently engaged in acts constituting infringement of the PURPLE HEART® Marks within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), through Wake Forest Purple Heart Foundation's use of marks that are the same or confusingly similar to the PURPLE HEART® Marks in commerce for the sale, offering for sale, distribution, advertisement, or rendering of goods or services in a manner that creates a likelihood of confusion, mistake, or deception.

42. Wake Forest Purple Heart Foundation's infringing conduct is the proximate cause of, and is likely to continue to cause, injury to the public and irreparable injury and monetary damages to the Purple Heart Foundation. Wake Forest Purple Heart Foundation's infringing conduct has been intentional and willful and manifests a deliberate and knowing disregard of the Purple Heart Foundation's service mark rights, making this an exceptional case. The Purple Heart Foundation is entitled to damages and injunctive relief pursuant to 15 U.S.C. §§ 1114, 1116, 1117, and 1118.

**COUNT II**
**Unfair Competition in Violation of 15 U.S.C. § 1125(a)**

43. The Purple Heart Foundation incorporates the allegations of all preceding paragraphs by reference as if fully set forth herein.

44. As a separate cause of action and ground for relief, the Purple Heart Foundation alleges that Wake Forest Purple Heart Foundation, by using the terms "Purple Heart," "Purple Heart Foundation," Defendant's Logo, and Wake Forest Purple Heart Foundation's domain name <wakeforestpurpleheartfoundation.org>, has caused and will continue to cause a likelihood of confusion, deception, and/or mistake as to the affiliation, connection, or association of Wake Forest Purple Heart Foundation with the Purple Heart Foundation, or as to the origin, sponsorship, or approval of goods or services offered by Wake Forest Purple Heart Foundation, or by the Purple Heart Foundation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45. Wake Forest Purple Heart Foundation's actions constitute unfair competition by false designation of origin within the meaning of 15 U.S.C. § 1125(a) and have caused and are likely to cause the Purple Heart Foundation to incur damages and suffer irreparable injury, for which the Purple Heart Foundation has no adequate remedy at law. The Purple Heart Foundation is entitled to damages and injunctive relief pursuant to 15 U.S.C. §§ 1114, 1116, 1117, and 1118.

**COUNT III**
**Service Mark Infringement and Unfair Competition Under North Carolina Common Law**

46. The Purple Heart Foundation incorporates the allegations of all preceding paragraphs by reference as if fully set forth herein.

47. As a separate cause of action and ground for relief, the Purple Heart Foundation alleges that it has protectable rights in the PURPLE HEART® Marks under the common law of the State of North Carolina, Wake Forest Purple Heart Foundation has been and is currently engaged in acts constituting infringement of the PURPLE HEART® Marks under the common law of the State of North Carolina through its use of the PURPLE HEART® Marks in commerce in the State of North Carolina in the sale, offering for sale, distribution, advertisement, or rendering

of goods or services in a manner that creates a likelihood of confusion, mistake, or deception in the minds of consumers.

48. Wake Forest Purple Heart Foundation's infringing conduct is causing and is likely to cause injury to the public and is causing and is likely to cause the Purple Heart Foundation to suffer irreparable injury. The Purple Heart Foundation is entitled to damages and injunctive relief under the common law of the State of North Carolina.

**COUNT IV**
**Violation of North Carolina's Unfair and Deceptive Trade Practices Act,**
**N.C. Gen. Stat. § 75-1.1 *et seq.***

49. The Purple Heart Foundation incorporates the allegations of all preceding paragraphs by reference as if fully set forth herein.

50. As a separate cause of action and ground for relief, the Purple Heart Foundation alleges that Wake Forest Purple Heart Foundation, by using the terms "Purple Heart," "Purple Heart Foundation," Defendant's Logo, and Wake Forest Purple Heart Foundation's domain name <wakeforestpurpleheartfoundation.org>, has caused a likelihood of confusion, deception, and/or mistake as to the affiliation, connection, or association of Wake Forest Purple Heart Foundation with the Purple Heart Foundation, or as to the origin, sponsorship, or approval of goods or services offered by Wake Forest Purple Heart Foundation, or by the Purple Heart Foundation, in violation of N.C. Gen. Stat. § 75-1.1 *et seq.* At all relevant times, Wake Forest Purple Heart Foundation has been and continues to be engaged in commerce in North Carolina as defined by chapter 75 of the North Carolina General Statutes, including at least through use of the "Purple Heart," "Purple Heart Foundation," Defendant's Logo, and the Wake Forest Purple Heart Foundation domain name <wakeforestpurpleheartfoundation.org> to relevant consumers in North Carolina, including within this judicial District.

51. Wake Forest Purple Heart Foundation's actions constitute unfair competition by false designation of origin within the meaning of N.C. Gen. Stat. § 75-1.1 *et seq.* and have caused and are likely to cause the Purple Heart Foundation to incur damages and suffer irreparable injury, for which the Purple Heart Foundation has no adequate remedy at law. Wake Forest Purple Heart Foundation has acted with full knowledge that its use of the terms "Purple Heart," "Purple Heart Foundation," Defendant's Logo, and the Wake Forest Purple Heart Foundation domain name <wakeforestpurpleheartfoundation.org> is confusingly similar to the Purple Heart Foundation's PURPLE HEART® Marks and with the intention to compete unfairly in the marketplace. Wake Forest Purple Heart Foundation's conduct is thus intentional, willful, and calculated to cause confusion, mistake, or deception. The Purple Heart Foundation is entitled to treble damages under N.C. Gen. Stat. § 75-16, attorneys' fees under N.C. Gen. Stat. § 75-16.1, and injunctive relief under N.C. Gen. Stat. § 75-19.

52. The wrongful conduct of Defendant in commerce in North Carolina and elsewhere, as alleged herein and above, constitutes unfair and/or deceptive acts or practices, which has injured and will continue to injure Plaintiff and which has resulted and will continue to result in damages to Plaintiff.

53. As a direct and proximate result of this unfair and deceptive conduct, Plaintiff has been damaged and is entitled to a judgment against Defendant for actual damages, and those damages are to be trebled pursuant to N.C. Gen. Stat. § 75-16.

**COUNT V**
**Cyberpiracy in Violation of 15 U.S.C. § 1125(d)**

54. The Purple Heart Foundation incorporates the allegations of all preceding paragraphs by reference as if fully set forth herein.

55. As a separate cause of action and ground for relief, the Purple Heart Foundation alleges that Wake Forest Purple Heart Foundation, directly or through an authorized agent and proxy registrant organization Domains By Proxy, LLC, has improperly registered or is improperly using the domain name <wakeforestpurpleheartfoundation.org> in violation of the Purple Heart Foundation's rights under 15 U.S.C. § 1125(d).

56. The Purple Heart Foundation owns the distinctive and valid PURPLE HEART® Marks and has owned one or more of the PURPLE HEART® Marks since long before any registration, acquisition, or use of the domain name <wakeforestpurpleheartfoundation.org> by Wake Forest Purple Heart Foundation.

57. Wake Forest Purple Heart Foundation, directly or through its authorized agent and proxy registrant organization Domains By Proxy, LLC, registered or otherwise acquired ownership of the domain name <wakeforestpurpleheartfoundation.org> without the Purple Heart Foundation's authorization and with a bad-faith intent to profit from the PURPLE HEART® Marks.

58. Wake Forest Purple Heart Foundation uses the domain name <wakeforestpurpleheartfoundation.org> in connection with a website, https://wakeforestpurpleheartfoundation.org, with a bad-faith intent to profit from the PURPLE HEART® Marks. Wake Forest Purple Heart Foundation does so profit and intends to continue profiting.

59. The domain name <wakeforestpurpleheartfoundation.org> is confusingly similar to one or more of the PURPLE HEART® Marks.

60. Wake Forest Purple Heart Foundation does not have any service mark rights in "PURPLE HEART" or "PURPLE HEART FOUNDATION," or the domain name

<purpleheartfoundation.org>.

61. Wake Forest Purple Heart Foundation intends to divert members of the public seeking the Purple Heart Foundation to Wake Forest Purple Heart Foundation's website for Wake Forest Purple Heart Foundation's commercial gain and with the intent to harm the Purple Heart Foundation and the PURPLE HEART® Marks by creating a likelihood of confusion, deception, or mistake as to the source, sponsorship, affiliation, or endorsement of its website, or as to the origin, sponsorship, or approval of services offered by Wake Forest Purple Heart Foundation, or by the Purple Heart Foundation, which will harm the goodwill represented by the PURPLE HEART® Marks, in violation of 15 U.S.C. § 1125(d).

62. The Purple Heart Foundation is entitled to an order from the Court that the domain name <wakeforestpurpleheartfoundation.org> be transferred to the Purple Heart Foundation.

63. As a direct and proximate result of the actions of Wake Forest Purple Heart Foundation, the Purple Heart Foundation has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined. Unless enjoined by this Court, these wrongful acts will continue to injure the Purple Heart Foundation and the public.

## VI. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Purple Heart Foundation demands a trial by jury as to all issues so triable in this action.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Purple Heart Foundation requests that the Court enter an order and judgment against Defendant Wake Forest Purple Heart Foundation as follows:

A. Preliminarily and permanently enjoining and restraining Wake Forest Purple Heart Foundation and its principals, officers, directors, shareholders, partners, agents, servants,

employees, parents, subsidiaries, and affiliates, and all persons acting in active concert or participation with any of them, from:

1. Using terms "PURPLE HEART" or "PURPLE HEART FOUNDATION," Defendant's Logo, or any other name or mark confusingly similar to the PURPLE HEART® Marks, in advertisements, social media, internet domain names, and anywhere else in connection with charitable fundraising services, veteran-assistance services, or any other service related in any way to those offered by the Purple Heart Foundation;

2. Representing, directly or indirectly, that there is any connection between the Purple Heart Foundation and Wake Forest Purple Heart Foundation or doing any other acts or things calculated or likely to cause confusion, mistake, or deception among members of the public or members of the trade as to the source, sponsorship, affiliation, or approval of Wake Forest Purple Heart Foundation's services;

B. Directing that Wake Forest Purple Heart Foundation, at its own expense, recall and destroy all labels, brochures, marketing, promotional, and advertising materials, and edit all website and social media presences or postings, that bear or incorporate the terms "PURPLE HEART" or "PURPLE HEART FOUNDATION," the Wake Forest Purple Heart Foundation Logo, or any other name or mark confusingly similar to the PURPLE HEART® Marks;

C. Directing that Wake Forest Purple Heart Foundation, at its own expense, cause ownership of the domain name <wakeforestpurpleheartfoundation.org> to be transferred to the Purple Heart Foundation or, in the event that Wake Forest Purple Heart Foundation fails to do so,

directing that the registrar of said domain name transfer ownership of it to the Purple Heart Foundation;

D. Directing that, within 15 days of the Court's order, Wake Forest Purple Heart Foundation deliver to the Purple Heart Foundation's attorneys or representatives an affidavit testifying that all labels, brochures, signs, prints, packages, molds, plates, dies, wrappers, receptacles, advertisements, documents, electronic media, or any other thing in its possession or under its control bearing the terms "PURPLE HEART" or "PURPLE HEART FOUNDATION," Defendant's Logo, or any other name or mark confusingly similar to the PURPLE HEART® Marks have been destroyed or modified such that they are no longer calculated or likely to cause confusion, mistake, or deception among members of the public or members of the trade as to the source, sponsorship, affiliation, or approval of the Purple Heart Foundation's goods or services;

E. Directing Wake Forest Purple Heart Foundation to file with this Court and to serve upon the Purple Heart Foundation, within thirty (30) days after issuance of an injunction in this action, a written report, under oath, setting forth in detail the manner in which Wake Forest Purple Heart Foundation has complied with the injunction;

F. Awarding the Purple Heart Foundation: the damages it has sustained or the profits Wake Forest Purple Heart Foundation has derived as a result of the acts complained of herein, that such actual damages be trebled; prejudgment interest, and its costs and reasonable attorneys' fees incurred in this action; and

G. Awarding the Purple Heart Foundation such other and further relief as this Court deems just and proper.

Dated: November 19, 2026

Respectfully submitted,

By: /s/ *Robert C. Van Arnam*

Robert C. Van Arnam, NC Bar No. 28838
Aaron T. Fadden, NC Bar No. 59495
**WILLIAMS MULLEN**
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
Telephone: (919) 981-4000
Facsimile: (919) 981-4300
rvanarnam@williamsmullen.com
afadden@williamsmullen.com

*And*

Sheldon H. Klein (*pro hac vice* forthcoming)
Michael L. Sturm (*pro hac vice* forthcoming)
**LATHROP GPM LLP**
1015 15th Street NW, Suite 1050
Washington, D.C. 20005
Tel: (202) 295-2200
sheldon.klein@lathropgpm.com
michael.sturm@lathropgpm.com

Lee B. Bennin (*pro hac vice* forthcoming)
**LATHROP GPM LLP**
80 South Eighth Street
3100 IDS Center
Minneapolis, MN 55402
Tel: (612) 632-3000
lee.bennin@lathropgpm.com

*Attorneys for Plaintiff*